IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| KIMBERLY SEGURA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TSCHETTER SULZER, P.C., a Colorado professional corporation, <br><br> Defendant. | Case No. <br><br> CLASS ACTION <br><br> JURY TRIAL REQUESTED |

### PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Kimberly Segura ("Plaintiff" or "Segura"), by and through her attorneys, Woodrow & Peluso, LLC and Cadiz Law, LLC, hereby brings this Class Action Complaint ("Complaint") against Defendant Tschetter Sulzer, P.C. ("Defendant" or "Tschetter") seeking a judgment awarding statutory and actual damages to Plaintiff and a class of all others similarly situated for Tschetter's serial violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. Seq*.

Tschetter, which bills itself as Colorado's premiere landlord firm, uses false representations or deceptive means to collect or attempt to collect debts allegedly owed by Segura and other tenants. Specifically, Tschetter knowingly mischaracterizes the amount and character of legal fees supposedly owed at the time of filing its eviction complaints, thereby inflating the amounts tenants believe they need to pay to avoid eviction and displacement.

Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

1

## PARTIES

1. At all times relevant for the purposes of this litigation, Plaintiff, Kimberly Segura, was a resident of Douglas County, Colorado. Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(3) because she allegedly accrued overdue rent for her primary residence, which is a debt for personal, family, or household purposes.

2. Defendant Tschetter Sulzer, P.C. is a Colorado Professional Corporation with a principal place of business at 3600 S. Yosemite St., Ste. 828, Denver, CO 80237. Tschetter is a debt collector within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(6). Among other reasons, it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts", and it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over the Plaintiff's claim because it raises a question under the FDCPA, a federal statute.

4. Venue is proper in this court as the Defendant's conduct complained of herein was directed at the Plaintiff while she resided in Douglas County, Colorado. Tschetter does business throughout the State of Colorado and is headquartered in this District.

## STATUTORY FRAMEWORK

5. As an entity that regularly "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," Tschetter is a "debt collector" under the Fair Debt Collections Practices Act ("FDCPA"). 15. U.S.C. § 1692a(6).

2

6. As a debt collector, Tschetter may not employ false, deceptive, or misleading means or engage in unfair practices when collecting debt. *Id.* § 1692(e) & (f).

7. The FDCPA is a strict liability statute—litigants are required only to show that one violation of a provision of the FDCPA occurred to be entitled to summary judgment. *See O'Connor v. Check Rite, Ltd.*, 973 F. Supp. 1010, 1020 (D. Colo. 1997).

## COMMON FACTUAL ALLEGATIONS

8. Tschetter claims it is "Colorado's Leading Landlord Advocacy Firm", that it is "#1 in Colorado Evictions", and that it has an "intimate understanding of the rental housing industry" and an "efficient approach to the eviction process … to process evictions quickly and effectively". Tschetter "guarantees … eviction cases are collection cases from day one." *See* "Tschetter Website Screenshots," true and accurate copies of which are attached hereto as **Ex. 1;** *see also* https://thslawfirm.com/.

9. The Firm's practice concentrates on filing eviction lawsuits against thousands of consumer tenants in Colorado each year for the non-payment of rent and other amounts allegedly due with the primary goal of leveraging the collection of said amounts, rather than possession of the leased property. Tschetter seeks judgments for possession and/or money, commonly referred to as "eviction-collection lawsuits", "eviction-collection cases", or "eviction-collection litigation" on behalf of its residential landlord and property manager clients in these cases and dismisses a significant portion of them after successfully leveraging the threat of eviction to compel payment.

10. Tschetter routinely uses instrumentalities of interstate commerce and the mails to pursue this eviction-collection litigation.

3

11. Upon information and belief, Tschetter charges most of its landlord clients a standard, flat fee of approximately $283.00 ("Eviction Legal Fee") to file and serve an eviction-collection lawsuit that includes "the preparation, filing, and serving of the Summons and Complaint; the attorney's time for the initial return date, and post judgment (Writ of Restitution) paperwork", but does not include further advocacy in the event a consumer tenant files a responsive pleading. In such instances, the Firm bills its landlord clients at its hourly rate in addition to its Eviction Legal Fee to provide further legal representation. *See* **Ex. 2**, 2-3 – Eviction Procedures.

12. Plaintiff's **Exhibit 2** is a true and accurate copy of Tschetter's "Eviction Procedures."

13. On information and belief, Tschetter is aware that its landlord clients routinely mark-up the Firm's Eviction Legal Fee of $283.00 before passing it on to consumer tenants, often for the marked-up amount of $348.00. *See* **Ex. 3** – Segura Ledger (Nov. 29, 2022…Legal Fees.)

14. On information and belief, Tschetter is aware of and facilitates its clients in routinely billing consumer tenants for the marked-up Eviction Legal Fee before Tschetter has ever filed an eviction-collection case against the tenant and/or before Tschetter has obtained a money judgment against the consumer tenant that includes an award of attorney fees and costs or has otherwise prevailed in litigation against the tenant.

15. On information and belief, Tschetter is aware that its clients characterize the Firm's marked-up Eviction Legal Fee in a manner that leads consumer tenants to believe the assessment is a dollar-for-dollar pass through of legal fees and costs charged by the Firm for filing an eviction-collection case against the consumer tenant. For example, the Eviction Legal Fee is labeled "rlegal – Eviction Filed (11/10/22) Legal Fee's [sic]…$348.00" on the Plaintiff's ledger. *See Id*

16. On information and belief, Tschetter is aware that its clients' billing/charging of the

4

marked-up Eviction Legal Fee creates a misunderstanding with tenants that they are liable or responsible for paying for the entirety of the Fee before their landlord has prevailed against them in a court of law.

17. On information and belief, Tschetter routinely reviews and advises its residential landlord clients in the drafting of their form residential lease terms and their standard "Demand for Rent or Possession" form required under Colorado law to initiate the eviction process for the nonpayment of rent.

18. On information and belief, Tschetter recommends that its landlord clients use the form "Demand for Rent or Possession" prepared by the Firm.

19. On information and belief, the majority of Tschetter's landlord clients use the Firm's standard "Demand for Rent or Possession" template form, as revised by the Firm from time to time.

20. Tschetter's "Demand for Rent or Possession" template form provides a blank for its landlord clients to insert amounts due for late fees, attorney fees, and court costs due that a tenant must pay in full to avoid eviction. *See* **Ex. 4** – Tschetter's Demand for Rent or Possession Form.

21. On information and belief, Tschetter is aware that Colo. Rev. Stat. 38-12- 105(1)(e) does not allow a tenant to be evicted for failure to pay one or more late fees.

22. On information and belief, Tschetter is aware that Colo. Rev. Stat. 38-12-105(7) does not allow a landlord to classify a late fee as rent for the purposes of Colo. Rev. Stat. 13-40-104(1)(d)—the Colorado statute that requires renters to be notified that Colorado law provides them with the right to pay rent, and rent alone, for up to ten days after being notified of their late status so as to avoid the escalation of the eviction process.

23. On information and belief, Tschetter is aware that Colo. Rev. Stat. 38-12- 801(3)(b) disallows fee-shifting clauses in a lease that award attorney fees and court costs to a party unless the clause is two-way and triggered *after* a party prevails in a court dispute.

24. On information and belief, Tschetter is aware that Colo. Rev. Stat. 13-40-115(4) requires a landlord to accept payment in full of all *lawful* amounts owed at any time prior to a judge issuing judgment for possession in an eviction case for non-payment.

25. Tschetter, despite having the knowledge described *supra*, unfairly and deceptively seeks to collect marked-up, mischaracterized Eviction Legal Fees and Late Fees from tenants as a matter of standard practice in the eviction-collection litigation it pursues by including the Eviction Legal Fee and Late Fees in the amounts stated as being due and owing in both the Form Demand for Rent or Possession it instructs its clients to serve as well as in the eviction complaints it files incorporating the Form Demand for Rent or Possession by reference.

26. Upon information and belief, Tschetter tells its landlord clients, including the Plaintiff's, that they are not required to accept anything less than the full amount set forth in its Form Demand for Rent or Possession, including Late Fees and Eviction Filing Fees, from a tenant attempting to cure and discourages them from doing so.

27. Further, and despite including the Eviction Legal Fee in its Form Complaint through the incorporated Form Demand for Rent or Possession, Tschetter's Form Complaint also prays for an award of its reasonable attorneys' fees and costs for its landlord clientele. *See* **Ex. 5**, ¶¶ 2 ("A copy of the notice(s) and/or demand(s) with fully executed Return of Service(s) is attached and incorporated by reference."), 3.

28. Tschetter uses its standardized Form Complaint and completed Form Demand for Rent or Possession in thousands of eviction-collection lawsuits that it files annually against

consumer tenants in Colorado.

29. Tschetter's Form Complaint sets forth numerous grounds upon which unlawful detainer may be pleaded generally and avers in the alternative that some of all of them have occurred. The Form Complaints are virtually always signed as having been reviewed and filed by the Firm's senior managing partner to the tune of thousands of eviction collection cases per year, so that it need not be customized based on a review of the facts and documents at issue in a particular eviction case and to otherwise facilitate Tschetter's bulk discount, collections business model.

30. The below is a true and accurate copy of a portion of Tschetter's Form Complaint:

> 2. The premises are located in Douglas County, Colorado. The Defendant(s) entered into a lease or contract with Plaintiff and/or occupy the premises. The Defendant(s) has/have defaulted on the lease or contract by failing to pay rent or amounts required under the terms of the lease or contract and/or by failing to comply with terms, conditions, and/or covenants of the lease or contract and/or the Defendant(s) no longer have any rights to occupy the premises. The Defendant(s) was/were served with all legal notice(s) and/or demand(s) concerning their occupancy of the premises. A copy of the notice(s) and/or demand(s) with fully executed Return of Service(s) is attached and incorporated by reference. Despite Plaintiff's Demands and/or Notices, Defendant(s) has/have refused to pay amounts owing and/or comply with lease or contract and/or cure their defaults and noncompliance with the lease or contract and/or vacate the premises, and continue to wrongfully hold possession of the premises in violation of the lease or contract and/or the law, and without the consent and permission of Plaintiff(s).
>
> 3. Plaintiff(s) has/have incurred and will continue to incur attorneys' fees and costs in prosecuting this possession action against the Defendant(s). Pursuant to the terms of the lease and/or statute, Plaintiff is entitled to recover said attorneys' fees and costs from the Defendant(s).
>
> WHEREFORE, Plaintiff Montane Acquisition LLC respectfully requests that the Court grant judgment for possession against Defendant(s) Kimberly Segura, Sofia Segura, AND ALL OTHER OCCUPANTS, jointly and severally, for costs, attorneys' fees pursuant to C.R.S. 13-40-101.et.seq., and for such further and other relief as the Court may deem just and appropriate.

*See* **Ex. 5**.

31. Tschetter's Form Complaint misleads tenants as to the allegations and collection litigation initiated against them by pleading a near-exhaustive list of the bases for an unlawful detainer claim in the alternative. The Form Complaint is likely to lead a reasonable consumer tenant to be unclear as to the nature, amount, and basis of the collection litigation and any purported debt,

7

as well as, the amount they need to pay to exercise right to cure.

32. Other than variations based on the identities of the landlord, consumer tenant, dates, and location of the rental property, Plaintiff's **Exhibit 5** is a true and accurate example of Tschetter's Form "Complaint Unlawful Detainer."

33. Plaintiff's **Exhibit 4** is a true and accurate copy of Tschetter's standard "Demand for Rent or Possession" marked as periodically revised, which Tschetter incorporates by reference into its Form complaint.

34. On information and belief, Tschetter maintains a policy and practice of only requiring its landlord clients to fax or email the Firm a copy of the statutory demand for rent or possession required by Colo. Rev. Stat. 13-40-104(1)(d) along with the Firm's fax cover sheet to commence an eviction—without any lawyer at Tschetter actually reviewing or discussing the documents and facts pertinent to the supposed tenant—to file an eviction-collection lawsuit against a tenant. *See* **Ex. 2** ("The following procedures apply after you send us your rent demand. If you are faxing the demand, please include the cover sheet with instructions, or include your instructions in your email if emailing.").

35. On information and belief, Tschetter does not provide legal services performed by one of its attorneys in association with the filing of its Form Complaint, let alone the senior partner that signs substantially all of such complaints, and as suggested by the misleadingly characterized Eviction Legal Fee it communicates as owed in the amount set forth in its Form Complaint through the incorporation of its standard "Demand for Rent or Possession", which includes the attorney fee charge, into its Form Complaint. Rather, on information and belief, Tschetter's non-attorney staff is responsible for the filing of Tschetter's Form Complaints.

36. Tschetter attempted to collect debts or purported debts from the Plaintiff using the

8

mails or other means of interstate commerce through its Form Complaint, the pleadings in the eviction-collection lawsuits it has filed, and other correspondence it has sent to consumer tenants seeking past-due rent allegedly owed on the recipient's primary residence.

37. Tschetter's business model and standard practices in pursuing collection litigation—including utilizing its unfair, unconscionable, and deceptive form Complaint and pursuing the collection of its marked-up and mischaracterized Eviction Legal Fee and Late Fees from consumer tenants—actually and proximately caused Plaintiff and the Class Members to suffer harm and damages. Among other things, the Form Complaint and Demand misled tenants as to the amount they must pay to avoid eviction, stay housed, and protect their credit scores and housing record.

38. Tschetter attempted to collect debts or purported debts from the Plaintiff using the mails or other means of interstate commerce.

## FACTS SPECIFIC TO PLAINTIFF SEGURA

39. Ms. Kimberly Segura leased an apartment in 2021 at the Montane Apartments complex from Avenue5 Residential LLC ("Avenue5") in Parker, Colorado, where she resided until approximately July 3, 2023.

40. According to the terms of the 2021-2022 lease, Ms. Segura was responsible for monthly rent in the amount of $1,777.00, in addition to utilities, which also provided for a flat rate late fee amount of $75.00. The rent increased to $1,906 when the lease was renewed in August of 2022. *See* **Ex. 6** – Segura Leases.

41. Avenue5's monthly charges were posted on the first of each month, and Ms. Segura routinely paid her full amount of monthly rent and utilities each month, sometimes paying more than the total balance owed. *Id*; *see also* **Ex. 3**.

9

42. Over the course of her lease, Segura was charged late fees several times, and Avenue5 routinely served her with a written demand for rent or possession, stating that she must pay late fees to maintain possession of her home.

43. Avenue5 issued a Demand for Rent or Possession on August 10, 2021, giving Segura thirty days to pay or surrender possession of her home. In addition to the balance of $1,940.34 for rent, the Demand alleged Ms. Segura would have to pay $221.70 in late fees. **Ex. 4**.

44. Ms. Segura was subsequently charged additional late fees in the amount of $70 on August 11. **Ex. 3**.

45. Ms. Segura paid $2,182.04 to Avenue5 on August 11, 2022, the entire remaining balance due from rent, utilities, other property fees, and late fees.

46. Avenue5 issued a Demand for Rent or Possession on November 8, 2021, giving her ten days to pay or surrender possession of her home. In addition to the balance of $1,717 for rent, the Demand alleged Ms. Segura would have to pay $85.85 in late fees effective November 9, 2021 and attorney fees of $288.00 upon the filing of an eviction to avoid eviction. **Ex. 4**.

47. Ms. Segura was subsequently charged late fees in the amount of $85.85 on November 9, and she was charged for legal fees in the amount of $288 on November 18, 2021. **Ex. 3**.

48. Ms. Segura paid $2,392.36 to Avenue5 on November 26, 2021, more than the entire remaining balance due from rent, utilities, other property fees, late fees, and legal fees.

49. Nevertheless, Avenue5 issued a Demand for Rent or Possession on December 6, 2021, giving Segura ten days to pay or surrender possession of her home. In addition to the balance of $1,755 for rent, the Demand alleged Ms. Segura would have to pay $87.75 in late fees effective December 9, 2021, and attorney fees of $288.00 upon the filing of an eviction to avoid eviction.

**Ex. 4**.

50. Ms. Segura was subsequently charged late fees in the amount of $85.85 on December 9, 2021 and she was charged for legal fees in the amount of $288 on December 20, 2021. **Ex. 3**.

51. Following a charge for rent in January 2022, Ms. Segura paid $4,030.00 to Avenue5 on January 7, 2022, more than the entire remaining balance due from rent, utilities, other property fees, late fees, and legal fees.

52. Avenue5's practice became a pattern: it issued a Demand for Rent or Possession on February 4, 2022, claiming Ms. Segura would have to pay $109.31 in late fees effective February 9, 2022 and attorney fees of $348.00 upon the filing of an eviction to avoid eviction. **Ex. 4**. Segura was charged $85.85 in late fees on February 9, 2022, and she paid her balance in full (including late fees) on February 13, 2022. **Ex. 3.**

53. Avenue5 issued a Demand for Rent or Possession on April 6, 2022, claiming Ms. Segura would have to pay $101.08 in late fees effective April 9, 2022 and attorney fees of $348.00 upon the filing of an eviction to avoid eviction. **Ex. 4**. Segura was charged $85.85 in late fees on April 9, 2022. **Ex. 4.**

54. Tschetter filed an eviction collection lawsuit against Ms. Segura on behalf of her landlord, Avenue5, on April 20, 2022, incorporating the Demand for Rent or Possession for alleged past due rent and other amounts alleged due, including the Eviction Legal Fee, Late Fees, interest, and an award of attorney's fees and costs from the Denver County Court in case number 22C031320. *See* **Ex. 5,** 1-2.

55. In its Complaint in Unlawful Detainer ("Complaint"), Tschetter incorporated and attached as an exhibit the April 6, 2022 Demand, thereby asserting the amount due as of the date

11

of the complaint was $2,470.68, comprising past due rent in the amount of $2,021.60, a $101.08 late fee (despite Segura's lease providing for a flat rate late fee in the amount of $75.00 at the time), and $348.00 as a marked-up charge for Tschetter's attorney fees—incurred and owed, according to the Demand, "as of the date the Landlord files an eviction lawsuit with the court." *See* **Ex. 6**, ¶ 6.

56. In seeking this amount, Tschetter incorporated and communicated the assertion of Avenue5 that Ms. Segura owed late fees and attorney fees as of the date the Complaint was filed and that those fees were required to be paid to cure the payment default to avoid eviction. That is to say, Tschetter's Complaint communicated that even if Ms. Segura could tender all past due rent, Tschetter would proceed with evicting her because anything less than payment of the total amount sought, including late fees and attorney's fees, would not suffice to cure non-payment to avoid eviction.

57. By including the marked-up pass through of attorney fees in the Complaint, Tschetter sought collection of these fees in the form of a debt owed by Ms. Segura, rather than by filing a motion for attorney fees following judgment being entered. Upon information and belief, Tschetter reserves the right and separately seeks an award of attorney fees in eviction collection matters when their landlord clients are the prevailing party in litigation.

58. Segura was charged $348 for attorneys' fees on April 21, 2022, and after a rent charge in May (and the imposition of additional late fees), she paid her balance in full (including all late fees and attorneys' fees) on May 9, 2022. **Ex. 3.**

59. Avenue5 issued a Demand for Rent or Possession on June 8, 2022, claiming Ms. Segura would have to pay $94.60 in late fees effective June 8, 2022 and attorney fees of $348.00 upon the filing of an eviction to avoid eviction. **Ex. 4**. Segura was charged $85.85 in late fees on

12

June 9, 2022, $388 in attorneys' fees on June 27, 2022, and after a rent charge in July, she paid part of her balance on July 5, 2022, and after incurring additional late fees on July 9, 2022, she paid her balance in full (including all late fees and attorneys' fees) on July 22, 2022. **Ex. 3.**

60. Tschetter filed an eviction collection lawsuit against Ms. Segura on behalf of her landlord, Avenue5, on June 27, 2022, incorporating the Demand for Rent or Possession and asserting a claim for unlawful detainer for alleged past due rent and other amounts alleged due, including the Eviction Legal Fee, Late Fees, interest, and an award of attorney's fees and costs from the Denver County Court in case number 22C32303. **Ex. 5**, 3-4.

61. In its Complaint in Unlawful Detainer ("Complaint"), Tschetter incorporated and attached as an exhibit the June 8, 2022 Demand, thereby asserting the amount due as of the date of the complaint was $2,533.77, comprising past due rent in the amount of $2,091.17, a $94.60 late fee (despite Segura's lease providing for a flat rate late fee in the amount of $75.00 at the time), and $348.00 as a marked-up charge for Tschetter's attorney fees—incurred and owed, according to the Demand, "as of the date the Landlord files an eviction lawsuit with the court."

62. Avenue5 issued a Demand for Rent or Possession on October 22, 2022, claiming Ms. Segura would have to pay $95.30 in late fees effective November 9, 2022 and attorney fees of $348.00 upon the filing of an eviction to avoid eviction. **Ex. 4**. Segura was charged $95.30 in late fees on November 9, 2022. **Ex. 3.**

63. Tschetter filed an eviction collection lawsuit against Ms. Segura on behalf of her landlord, Avenue5, on November 14, 2022, incorporating the Demand for Rent or Possession and asserting a claim for unlawful detainer for alleged past due rent and other amounts alleged due, including the Eviction Legal Fee, Late Fees, interest, and an award of attorney's fees and costs from the Denver County Court in case number 22C033960. *See* **Ex. 5**, 5-6.

13

64. In its Complaint in Unlawful Detainer ("Complaint"), Tschetter incorporated and attached as an exhibit the October 22, 2022 Demand, thereby asserting the amount due as of the date of the complaint was $5,236.12, comprising past due rent (and past due late fees) in the amount of $4,792.82, a $95.30 late fee, and the $348.00 as a marked-up pass through of Tschetter's attorney fees—incurred and owed, according to the Demand, "as of the date the Landlord files an eviction lawsuit with the court." In seeking this amount, Tschetter incorporated and communicated the assertion of Avenue5 that Ms. Segura owed late fees and attorney fees as of the date the Complaint was filed and that those fees were required to be paid in order to cure the payment default to avoid eviction.

65. That is to say, Tschetter's Complaint communicated that even if Ms. Segura could tender all past due rent, Tschetter would proceed with evicting her because anything less than payment of the total amount sought, including late fees and attorney's fees, would not suffice to cure non-payment in order to avoid eviction.

66. By including the marked-up pass through of attorney fees in the Complaint, Tschetter sought collection of these fees in the form of a debt owed by Ms. Segura, rather than by filing a motion for attorney fees following judgment being entered.

67. On information and belief, Tschetter reserves the right and separately seeks an award of attorney fees in eviction collection matters when their landlord clients are the prevailing party in litigation.

68. Segura was charged $348 for attorneys' fees on November 29, 2022, and through the Colorado Stability Fund – Rental Assistance program, she paid her balance in full (including all late fees and attorneys' fees) on December 5, 2022. **Ex. 3.**

69. Upon information and belief, the Tschetter firm affixes the signature of its senior

14

managing partner, Mark Tschetter, to each and every eviction collection lawsuit it files, including the cases against Ms. Segura, through either its automated processes or its standard procedures carried out by its non-attorney staff and without the performance of legal services by an attorney.

70. Upon information and belief, neither Mr. Tschetter nor any other Tschetter attorney had any meaningful involvement in the preparation and filing of the eviction collection cases against Ms. Segura.

71. The amount sought by Tschetter in the eviction collection lawsuits filed against Ms. Segura included—and thereby misleadingly communicated as owed to avoid eviction—the $348.00 assessment for the marked-up and mischaracterized Eviction Legal Fee assessed prior to the case having been heard, thereby improperly bypassing any ruling of the court on the reasonableness of the fees as required by Colo. Rev. Stat. 38-12-801(3)(b).

72. The amount sought by Tschetter in the eviction collection lawsuits also improperly and misleadingly included—thereby communicating as owed to avoid eviction—Defendant's late fee charges despite Colo. Rev. Stat. 38-12-105(1)(e) proscription against evicting a tenant for the nonpayment of a late fee.

73. Tschetter's improper assertion that the Eviction Legal Fee and late fee were owed in the eviction collection litigations gave Ms. Segura the false impression that those sums were owed and included in what she had to pay to avoid eviction.

74. Ms. Segura vacated her home and returned her keys to Avenue5 Residential LLC on approximately July 3, 2023.

75. By misleading Segura as to the amounts owed to avoid eviction, Defendant's actions caused Ms. Segura to suffer actual monetary damages—she paid the amounts demanded in full, including the late fees and legal fees, relying upon the representation that she was required

15

to pay all late fees and attorneys' fees to maintain possession of her home.

## CLASS ACTION ALLEGATIONS

76.     Segura brings this action in accordance with Rule 23(b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

**Class Definition**: All present and former Tenants: (1) of residential rental properties located in Colorado, (2) whose landlords engaged Tschetter to facilitate the collection of allegedly overdue rent through the initiation of eviction lawsuits, and (3) who had at least one eviction complaint filed against them where the complaint and incorporated Demand for Rent or Possession included the Eviction Legal Fee, other attorney fees, or Late Fees in addition to any other amounts alleged due.

77.     Plaintiff anticipates the need to amend the Class Definition following appropriate discovery regarding the size and scope of the alleged class.

78.     Numerosity: On information and belief, the number of individuals in the class exceeds 100 persons. Class membership may be ascertained through reference to objective criteria that includes Tschetter's business and eviction records, namely complaints and demands issued to consumer tenants.

79.     Commonality: There are questions of law and fact common to the class that will drive the litigation, including:

   a.     Whether Defendant is a debt collector under the FDCPA;

   b.     Whether Defendant made false representations about the character, amount, or legal status of any debt, particularly late fees, the Eviction Legal Fee, and attorney fees and costs;

   c.     Whether Defendant actually performed the legal services for which it

16

sought to be compensated or whether it used non-attorney staff for such work and improperly billed the work as having been performed by an attorney;

   d. Whether Defendant used false, deceptive, or misleading representations in connection with collection of a debt through its incorporation of the late fees, Eviction Legal Fee, and attorney fees and costs in its Complaint;

   e. Whether Defendant used unfair or unconscionable means to collect or attempt to collect a debt through its use of its inclusion of late fees, the Eviction Legal Fee and attorney fees and costs in the Complaint;

   f. Whether Defendant used unfair or unconscionable means to collect or attempt to collect a debt through its standard policies and practices, and form Complaint, in initiating eviction collection lawsuits;

   g. Whether Plaintiff and the other tenants are entitled to statutory and/or actual damages for Defendant's misleading, deceptive, and/or unfair conduct; and

   h. Such other common questions to be revealed through discovery and trial.

  80. Typicality: the claims of the named Plaintiff are typical of the claims of the class because she has the same interests—if Defendant's demand and legal complaints for charges labeled late fees and attorney fees to avoid eviction violated the FDCPA because they were misleading, deceptive, and/or unfair with respect to Plaintiff, then such conduct violated the FDCPA with respect to the other members of the class.

  81. Adequacy of Representation: Plaintiff and her counsel will fairly and adequately represent the interests of the class. Plaintiff will vigorously pursue these claims. There are no known conflicts of interest between Plaintiff and members of the class, and Plaintiff is represented by attorneys who are experienced in consumer class actions, including class actions alleging

17

violations of consumer statutes and landlord tenant matters.

82. Predominance, Superiority and Manageability: Questions of law and fact common to class members predominate over any questions affecting only individuals. A class action is superior and manageable. To Plaintiff's knowledge, there is current litigation of individual claims under separate provisions of the FDCPA pending against Defendant in this forum. There is also a pending alleged class action for statutory damages that does not include a claim for actual damages as set forth herein. Individual recoveries are too low to incentivize such litigation. A class action therefore will allow the claims to be efficiently adjudicated in a single forum promoting uniformity of judgments and judicial economy.

## FIRST CAUSE OF ACTION
### Violation of the FDCPA
### on behalf of the Class against Defendant Tschetter

83. All preceding paragraphs are realleged and incorporated by reference as if set forth fully herein.

84. At all times relevant to this action, Tschetter was a debt collector within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(6). It engaged in a business through which it regularly collected and attempted to collect debts using the instrumentalities of interstate commerce, and its principal purpose was to collect debts, owed or due to another which were already in default.

85. Plaintiff Segura and all class members are consumers within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(3), because the alleged overdue rent and other amounts were debts incurred for personal, family, or household purposes.

86. Tschetter's practice of including late fees and attorney fees in its eviction collection Complaints and in its incorporated Demands for Rent and Possession as described herein was deceptive in violation of the FDCPA, 15 U.S.C. § 1692(e), (e)(2)(A) and (B), (3), (5), and

18

(10).

87. Tschetter's practice of including late fees and attorney fees in the eviction collection Complaints and in its incorporated Demands for Rent and Possession as described above was unfair and/or unconscionable for the purposes of the FDCPA, 15 U.S.C. § 1692(f), and (f)(1).

88. Defendant's noncompliance with the FDCPA was intentional within the meaning of 15 U.S.C. § 1692k, as Defendant intended to and did in fact draft, send, and file the defective, unfair, and unconscionable Complaint, including its Form Demand for Rent or Possession that it incorporated into its Form Complaint, and presented it to Plaintiff and the class members knowing that it was deceptive because, among other things, it:

(1) adopted and sought judgment on unlawful and void one-way fee shifting provisions of lease agreements contrary to Colo. Rev. Stat. 38-12- 801(3)(b) and late fees contrary to Colo. Rev. Stat. 38-12-105(1)(e);

(2) represented that the amount of the marked-up flat fee attorney fee reflected the amount of attorney's fees actually incurred and that the character of the attorney fee charge was for legal services provided by an attorney as opposed to Tschetter's non-attorney staff;

(3) misled tenants into believing they owed attorney fees to landlords upon the filing of an eviction rather than to the prevailing party at the end of litigation, as well as late fees, to avoid eviction; and

(4) upon information and belief, caused some tenants to pay the attorney fees demanded before judgment was obtained and/or to pay the late fees to avoid eviction and/or causing tenants who were unable to pay such impermissible charges in addition to rent in order to cure to lose possession of their homes.

89. Defendant violated the FDCPA, 15 U.S.C. § 1692d, §1692(e), (e)(2)(A) and (B),

(3), (5), (9), and (10), and 1692(f), (f)(1), actually and proximately causing legal harm and injury to Plaintiff, as well as the entire class, thus making Tschetter liable to them for actual damages. These damages include, but are not limited to, statutory damages allowed under the FDCPA and actual damages in the unlawful amounts and/or mark ups paid.

## **PRAYER FOR RELIEF**

Wherefore, Segura respectfully request that this Court enter an Order of judgment:

A. Certifying the plaintiff class pursuant to F.R.C.P. 23(a) and (b)(3), appointing Plaintiff as the Class Representative and her lawyers as Class Counsel;

B. Awarding damages to Plaintiff and the Class pursuant to 15 U.S.C. § 1692k, including but not limited to statutory damages in the amount of $1,000 per named plaintiff plus the lesser of $500,000 or 1% of the net worth of the Defendant, actual damages equal to all unlawful amounts for late fees and eviction legal fees wrongfully charged and withheld, the costs of the action, reasonable attorneys' fees, and pre- and post-judgement interest; and

C. Awarding such other and further relief as this Court deems necessary, adequate and just.

Dated: June 11, 2024                                            Respectfully submitted,

By: */s/ Jason Legg*
Jason Legg (#42946) CADIZ LAW, LLC
501 S. Cherry St., Ste. 1100
Denver, CO 80246 jason@cadizlawfirm.com

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210

*Counsel for Plaintiff*

20